**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| AFFILIATED FM INSURANCE COMPANY, a Rhode Island corporation, *Plaintiff-Appellant,* v. LTK CONSULTING SERVICES INC, a Pennsylvania corporation, *Defendant-Appellee.* | No. 07-35696 D.C. No. CV-06-01750-JLR ORDER CERTIFYING QUESTION TO WASHINGTON STATE SUPREME COURT |

Filed February 17, 2009

Before: Robert R. Beezer, Ronald M. Gould and Consuelo M. Callahan, Circuit Judges.

---

**COUNSEL**

William E. Pierson, Jr., 1601 Fifth Avenue, Suite 2500, Seattle, Washington, for the plaintiff-appellant Affiliated FM Insurance Co.

Steven G.M. Stein and Brandon G. Hummel, Stein, Ray & Harris LLP, 222 W. Adams, Suite 1800, Chicago, Illinois; Beth Andrus, Skellenger Bender, P.S., 1301 Fifth Avenue, Suite 1401, Seattle, Washington, for the defendant-appellee LTK Consulting Services, Inc.

---

**ORDER**

We respectfully ask the Washington State Supreme Court to answer the certified question presented below, pursuant to

Revised Code of Washington § 2.60.020, because "it is necessary to ascertain the local law of [Washington] state in order to dispose of [this] proceeding and the local law has not been clearly determined." This case involves a tort claim under Washington law for approximately $3 million in damages to the Monorail System—the elevated train system located in downtown Seattle—allegedly caused by negligent design advice from LTK Consulting ("LTK"). LTK asserts that the "economic loss rule" precludes this suit, and that the plaintiff, Affiliated FM Insurance ("AFM"), lacks an adequate interest in the Monorail System upon which to base a suit in tort.

# I

We summarize the material facts: This suit is brought by AFM, based on the rights of its insured, Seattle Monorail Services Joint Venture ("SMS"). The Monorail System is owned by the City of Seattle ("the City"). In 1994, the City entered into a "Monorail Concession Agreement" ("the Agreement") with SMS. The Agreement granted to SMS the right to operate the Monorail System, but retained for the City the right to enter the property and to adjust operation of the Monorail System as necessary. As part of the Agreement, SMS agreed to maintain insurance on the Monorail System, with the City as loss payee, and SMS procured this insurance with AFM.

In 1999, under a separate contract, the City hired LTK to identify and repair problems with the Monorail's trains. Neither SMS nor AFM was a party to the City's contract with LTK. LTK completed its work in 2002. On May 31, 2004, the Monorail Blue Train caught fire, damaging both the Blue and Red Trains, and interrupting Monorail service. AFM alleges that the fire was a result of LTK's negligent design. LTK disagrees, but concedes for the sake of argument in its summary judgment motion that its negligent design caused the fire. Pursuant to SMS's policy with AFM—and after settlement of a coverage dispute—AFM paid $3,267,861 for damages to the Monorail System resulting from the fire. On November 7,

2006 AFM filed this tort action against LTK as subrogee to the rights of SMS, and LTK removed the case to federal district court based on diversity of citizenship under 28 U.S.C. § 1332. The district court, sitting with jurisdiction based on diversity of citizenship of the parties, granted summary judgment to LTK on the ground that AFM is barred under Washington law by the economic loss rule from suing LTK in tort.

## II

We next identify the issue that is the basis for our certification order: whether a party with a right to operate commercially and extensively on another's property may bring a suit in tort against a third party for damage to that property. Defendant relies primarily on the Washington State Supreme Court's economic loss rule as explained in *Berschauer/ Phillips Construction Co. v. Seattle School Dist. No. 1*, 881 P.2d 986, 992 (Wash. 1994), to argue that a suit in tort is not allowed in such a case.

In *Berschauer*, a general contractor sued an architect, a structural engineer, and a project inspector because they allegedly caused construction delays. *Berschauer*, 881 P.2d at 988. None of the defendants were in privity of contract with the general contractor, so the general contractor relied on a tort theory. *Id.* The Washington State Supreme Court held that the economic loss rule barred the tort claim. *Id.* at 992-93. Justice Guy, writing for the Court, explained: "A brightline distinction between the remedies offered in contract and tort with respect to economic damages . . . encourages parties to negotiate toward the risk distribution that is desired or customary." *Id.* at 992. Thus, "[i]n cases involving construction disputes, the contracts entered into among the various parties shall govern their economic expectations." *Id.* at 993.

As we understand this doctrine of Washington law, the economic loss rule has two primary features. First, it precludes tort suits for purely commercial losses, as opposed to losses

"from personal injury or injury to other property." *Alejandre v. Bull*, 153 P.3d 864, 869 (Wash. 2007). Second, the primary goals of the rule are to distinguish between contract and tort remedies and to encourage parties to allocate risk through contract. *Id.* at 870-71.

In this case, the loss suffered is "economic" or "commercial" in that SMS suffered harm to its contractually-created economic interest in operating the Monorail. However, AFM argues that SMS's right to operate the Monorail exclusively is more like a "property interest" and that the economic loss rule should therefore not apply because SMS's interest is not purely "economic." No Washington State Supreme Court precedent explains the degree of interest one must have in property to bring a suit in tort for damage to that property.

It is also unclear how the contract-tort distinction that is central to the economic loss rule applies here. That is, SMS was not in privity of contract with LTK; SMS contracted with the City, which in turn contracted independently with LTK. If the core of the economic loss rule is the allocation of risk through contract, it is unclear how the parties here should have allocated that risk. It is possible that SMS could have contracted with the City for the right to sue third parties on contracts that the City entered with those third parties. However, the desirability of particular risk allocation is an issue of Washington State policy that the Washington State Supreme Court is in a better position than our court to decide, and we hesitate to declare Washington law on an issue that has not been definitively resolved by the Washington State Supreme Court.

This case provides the Washington State Supreme Court an opportunity to explain more fully how, if at all, the economic loss rule applies to parties who have not contracted with each other. In *Berschauer*, the plaintiff-general contractor was not in privity of contract with the defendants, but the District, which was in privity of contract with two of the defendants,

had assigned its contract claims to the plaintiff. *Berschauer*, 881 P.2d at 988-89. Thus, the plaintiff was able to pursue the District's contract claims vicariously against the defendants and the Washington State Supreme Court limited plaintiff to those contract claims. *Id.* Justice Chambers also noted in his concurrence in *Alejandre*—where the parties were in privity of contract—that the economic loss rule has been applied in cases, like *Berschauer*, where privity of contract did not exist. *See Alejandre*, 153 P.3d at 874 n.8. However, neither *Berschauer* nor *Alejandre* elaborated on how the economic loss rule should apply generally to parties not in privity of contract, where the plaintiff has not received an assignment of claims from a party in privity of contract.

Because we have concluded that this important question of Washington tort law is not entirely settled and involves matters of policy best left to state resolution, we have concluded that certification of a question to the Washington State Supreme Court is the most appropriate course of action. If the Washington State Supreme Court concludes that a party with a contractual right to operate commercially and extensively on another's property may bring a suit in tort against a third party for damage to that property, we will reverse the district court's order granting summary judgment to LTK. If, however, the Washington State Supreme Court decides that the economic loss rule, or some other legal rule, bars such a suit in tort, we will affirm the district court's grant of summary judgment in favor of LTK.

## ORDER

In light of our foregoing discussion, and because the answer to this question is "necessary to ascertain the local law of this state in order to dispose" of this appeal, RCW § 2.60.020, we respectfully certify to the Washington State Supreme Court the following question:

> May party A (here, SMS, whose rights are asserted in subrogation by AFM), who has a contractual right

to operate commercially and extensively on property owned by non-party B (here, the City of Seattle), sue party C (here, LTK) in tort for damage to that property, when A (SMS) and C (LTK) are not in privity of contract?

We do not intend our framing of this question to restrict the Washington State Supreme Court's consideration of any issues that it determines are relevant. If the Washington State Supreme Court decides to consider the certified question, it may in its discretion reformulate the question. *Broad v. Mannesmann Anlagenbau AG*, 196 F.3d 1075, 1076 (9th Cir. 1999).

If the Washington State Supreme Court accepts review of the certified question, we designate appellant Affiliated FM Insurance as the party to file the first brief pursuant to Washington Rule of Appellate Procedure ("WRAP") 16.16(e)(1).

The clerk of our court is hereby ordered to transmit forthwith to the Washington State Supreme Court, under official seal of the United States Court of Appeals for the Ninth Circuit, a copy of this order and all relevant briefs and excerpts of record pursuant to Revised Code of Washington §§ 2.60.010, 2.60.030 and WRAP 16.16.

Further proceedings in our court on the certified question are stayed pending the Washington State Supreme Court's decision whether it will accept review, and if so, receipt of the answer to the certified question. This case is withdrawn from submission until further order from this court. The panel will resume control and jurisdiction on the certified question upon receiving an answer to the certified question or upon the Washington State Supreme Court's decision to decline to answer the certified question. When the Washington State Supreme Court decides whether or not to accept the certified question, the parties shall file a joint report informing this court of the decision. If the Washington State Supreme Court

accepts the certified question, the parties shall file a joint status report every six months after the date of the acceptance, or more frequently if circumstances warrant.

It is so **ORDERED**.

_____

RONALD M. GOULD
Circuit Judge, United States Court of
   Appeals for the Ninth Circuit
Presiding Judge of the Certifying Panel

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2009 Thomson Reuters/West.