230 P.3d 646 (2010)
Richard and Penny BORISH, husband and wife, Appellants and Cross-Respondents,
v.
Kristy M. RUSSELL and John Doe, and their marital community, Respondents and Cross-Appellants,
Keith R. and Jodi T. Olson, husband and wife and their marital community, Respondents,
John L. Scott, Inc.; Kimberly Gartland and John Doe, and their marital community; Stephen Bono and Jane Doe, and their marital community; and Jim O'Brien and Jane Doe, and their marital community, Defendants.
No. 37596-6-II.
Court of Appeals of Washington, Division 2.
May 4, 2010.
*647 Douglas S. Tingvall, Attorney at Law, Newcastle, WA, for Respondents.
Matthew F. Davis, L'nayim Shuman-Austin, Attorneys at Law, Seattle, WA, for Appellants and Cross-Respondents.
Joel Evans Wright, Michelle Anastasia Corsi, William Roger Kiendl, Lee Smart PS Inc., Seattle, WA, for Respondents and Cross-Appellants.
QUINN-BRINTNALL, J.
¶ 1 Home purchasers Richard and Penny Borish brought negligent misrepresentation claims against sellers Keith and Jodi Olson and appraiser Kristy Russell. The trial court granted summary judgment in favor of the Olsons and Russell based on the economic loss rule. The Borishes appeal, arguing that the trial court improperly applied the economic loss rule. We disagree. The trial court properly applied the economic loss rule *648 and we affirm the dismissal of the Borishes' claim against the Olsons. But we agree with the Borishes that the trial court improperly applied the economic loss rule when it dismissed their claim against Russell because no contract exists between the Borishes and Russell. Moreover, material issues of disputed fact remain regarding the nature of the sold residence and the Borishes' reliance on Russell's appraisal when closing on the real estate purchase. Accordingly, we reverse the trial court's summary judgment in favor of Russell and remand for a trial on this claim.

FACTS

Background
¶ 2 On October 22, 2004, the Olsons listed their waterfront home on Horsehead Bay in Pierce County for sale through John L. Scott, Inc. The listing advertised the property as a "Stick Built On Lot" home with one bedroom and a detached two-car garage.[1] Clerk's Papers (CP) at 643. On a seller disclosure statement, the Olsons indicated there were no "zoning violations, nonconforming uses, or any unusual restrictions on the property that would affect future construction or remodeling" (CP at 162) and there were no "conversions, additions or remodeling" to the home. CP at 164. Additionally, the Olsons crossed out the "manufactured and mobile homes" section on the seller disclosure statement indicating that the home was neither a manufactured nor a mobile home.
¶ 3 The Borishes hired Stephen Bono, of John L. Scott, as their real estate agent. On January 27, 2005, after several bids, the Borishes and the Olsons reached a mutually agreed price of $680,000.00 and signed a Residential Real Estate Purchase and Sale Agreement (RESPA). The Borishes expressed an intent to remodel the home and wanted a RESPA addendum making the sale contingent on the outcome of a remodeling feasibility study, but the Olsons did not agree and this contingency language was crossed out in the final purchase and sale agreement. The RESPA did include a general inspection contingency provision as well as an option to cancel the agreement if the appraised value of the property was less than the purchase price.
¶ 4 On February 2, 2005, a home inspection revealed minor deficiencies but no structural defects. On February 5, 2005, the Borishes and the Olsons added an addendum to the RESPA detailing certain repairs identified by the inspector that the Olsons would make.
¶ 5 The Borishes' lender, First Financial Equities, Inc., hired Russell to appraise the property. On February 8, 2005, Russell completed a Uniform Residential Appraisal Report on the home. While performing the appraisal, Russell had minimal contact with the Olsons. Although Russell noted the home was remodeled, based on her appraisal and the county records that she obtained, she determined "[t]he subject is a good quality one story dwelling in good condition." CP at 209. She also indicated it was not a manufactured home and valued the property at $682,318.00.
¶ 6 On February 25, 2005, after the Olsons had made the necessary minor repairs and after reviewing the property listing, the home inspection report, and Russell's appraisal, the Borishes signed a statutory warranty deed. The parties closed the sale on March 2, 2005.
¶ 7 In April 2005, the Borishes hired an engineer to review the home for their remodel. The engineer told the Borishes that the home appeared to be "a highly modified trailer home, with a southern addition." CP at 1384. Subsequently the Department of Labor & Industries inspected the home, finding that it "appear[ed] to be an altered manufactured home." CP at 1387. These findings *649 prevented the Borishes' remodel because the home was not structurally sound.
¶ 8 During discovery, Caroline Black testified in her deposition that she and her husband built the disputed home using salvaged metal beams from a mobile home damaged in a windstorm as the main floor supports. The couple built the frames for the house while at their previous Spanaway property, transported the frames to the Horsehead Bay property, and completed the construction of the home in compliance with building permit requirements.

Procedural
¶ 9 The Borishes filed suit in Pierce County Superior Court on January 23, 2006, alleging misrepresentation (fraud), negligence (negligent misrepresentation), RCW 18.86.030, and Consumer Protection Act (CPA), ch. 19.86 RCW, violations by six different parties.[2] The Borishes specified only economic damages in their complaint.[3]
¶ 10 Both Russell and the Olsons moved for summary judgment at several points throughout the course of the trial litigation. Russell's and the Olsons' early summary judgment motions failed except that on March 8, 2007, the trial court dismissed any general negligence claims against Russell because there was no separate basis for them distinguishable from the negligent misrepresentation claim.
¶ 11 On April 27, 2007, in response to our Supreme Court's decision in Alejandre v. Bull, 159 Wash.2d 674, 153 P.3d 864 (2007), Russell moved for summary judgment on the negligent misrepresentation claim, arguing that the economic loss rule applied to her. On May 18, 2007, the trial court granted Russell's summary judgment motion and dismissed her as a party in the lawsuit.
¶ 12 On May 24, 2007, and June 4, 2007, the Olsons renewed their motion for summary judgment. The record on appeal does not contain the trial court's consideration or order relating to the Olsons' renewed summary judgment motion. However, the record does indicate that a jury trial was held from February 19, 2008 through February 25, 2008, on the issues of fraudulent concealment and intentional misrepresentation (fraud), and that the jury returned a verdict in favor of the Olsons, finding no fraudulent concealment and that although the Olsons knowingly made a material misrepresentation of fact that the Borishes relied upon, the Borishes' reliance was not justifiable. On March 27, 2008, the trial court entered a judgment in favor of the Olsons for $38,315.80 in attorney fees and noted "[a]s previously decided at oral argument, the Borshes' [sic] negligent misrepresentation claims against the Olsons are dismissed on summary judgment." CP at 574.
¶ 13 On April 9, 2008, the Borishes appealed the March 27, 2008 judgment in favor of the Olsons and the May 18, 2007 order granting summary judgment in favor of Russell. On April 23, 2008, Russell cross-appealed a February 9, 2007 court order denying her summary judgment motion. The next day, April 24, 2008, the Borishes filed a direct appeal to the Washington Supreme Court. On March 31, 2009, the Supreme Court transferred the case to this court for our review.[4]

*650 ANALYSIS
¶ 14 We review an order granting summary judgment de novo, engaging in the same inquiry as the trial court. Hisle v. Todd Pac. Shipyards Corp., 151 Wash.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). We view all facts in the light most favorable to the nonmoving party. Vallandigham v. Clover Park Sch. Dist. No. 400, 154 Wash.2d 16, 26, 109 P.3d 805 (2005). Summary judgment is appropriate only if reasonable persons could reach but one conclusion from all the evidence. Vallandigham, 154 Wash.2d at 26, 109 P.3d 805.

The Olsons' Summary Judgment
¶ 15 The Borishes assert that the trial court erred by applying the economic loss rule to dismiss their negligent misrepresentation tort claim against the Olsons. Specifically, the Borishes argue that, notwithstanding our Supreme Court's decision in Alejandre, the economic loss rule does not apply to negligent misrepresentation claims. We disagree.
¶ 16 Under the economic loss rule, Washington plaintiffs who are parties to a contract are prohibited from recovering "economic losses" in a tort action arising out of the contract because "tort law is not intended to compensate parties for losses suffered as a result of a breach of duties assumed only by agreement." Alejandre, 159 Wash.2d at 682, 153 P.3d 864 (internal quotation marks omitted) (quoting Factory Mkt., Inc. v. Schuller Int'l, Inc., 987 F.Supp. 387, 395 (E.D.Pa. 1997)). Our Supreme Court has summarized the economic loss rule succinctly, stating:
[T]he purpose of the economic loss rule is to bar recovery for alleged breach of tort duties where a contractual relationship exists and the losses are economic losses. If the economic loss rule applies, the party will be held to contract remedies, regardless of how the plaintiff characterizes the claims. . . . The key inquiry is the nature of the loss and the manner in which it occurs, i.e., are the losses economic losses, with economic losses distinguished from personal injury or injury to other property. If the claimed loss is an economic loss and no exception applies to the economic loss rule, then the parties will be limited to contractual remedies.
Alejandre, 159 Wash.2d at 683-84, 153 P.3d 864.
¶ 17 In order for the economic loss rule to apply and preclude tort damages for negligent misrepresentation, there must be a contract between the parties. Water's Edge Homeowners Ass'n v. Water's Edge Assocs., 152 Wash.App. 572, 589-91, 216 P.3d 1110 (2009), review denied, 168 Wash.2d 1019, 228 P.3d 17 (2010); see also Alejandre, 159 Wash.2d at 681, 153 P.3d 864 (stating that the "economic loss rule applies to hold parties to their contract remedies"); Wash. Water Power Co. v. Graybar Elec. Co., 112 Wash.2d 847, 861 n. 10, 774 P.2d 1199 (1989) ("[E]conomic loss describes those damages falling on the contract side of `the line between tort and contract.'" (quoting Pa. Glass Sand Corp. v. Caterpillar Tractor Co., 652 F.2d 1165, 1173 (3d Cir.1981))). The economic loss rule marks the boundary between the law of contracts and the law of torts. Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1, 124 Wash.2d 816, 821, 881 P.2d 986 (1994). In general, the goal of tort law is to "restor[e] the plaintiff to the position he or she was in prior to the defendant's harmful conduct" whereas the goal of contract law is to "plac[e] the plaintiff where he or she would be if the defendant had performed." Alejandre, 159 Wash.2d at 682, 153 P.3d 864. Tort law redresses physical harm injuries whereas contract law protects expectation interests. Alejandre, 159 Wash.2d at 682, 153 P.3d 864; Stuart v. Coldwell Banker Commercial Group, Inc., 109 Wash.2d 406, 420-21, 745 P.2d 1284 (1987).
¶ 18 Alejandre sued for economic losses related to alleged negligent misrepresentations *651 of a defective septic system included in a home purchase and sale agreement. Alejandre, 159 Wash.2d at 685-86, 153 P.3d 864. Our Supreme Court held that the economic loss rule limited Alejandre to contract remedies because his damages were purely economic, a contract governed the parties' relationship, and no recognized exception to the economic loss rule applied. Alejandre, 159 Wash.2d at 685-86, 689, 153 P.3d 864. Contrary to the Borishes' assertions, in Alejandre, our Supreme Court neither expanded nor limited the scope of the economic loss rule. Rather, our Supreme Court chronicled the development of the economic loss rule in our state and then applied the rule to the facts in the case. See Alejandre, 159 Wash.2d at 681-89, 153 P.3d 864.
¶ 19 Here, the facts are similar to those in Alejandre and the trial court properly applied the economic loss rule to dismiss the Borishes' negligent misrepresentation claim against the Olsons. The Borishes' damages are purely economic. The Borishes only requested economic damages in their complaint and a homeowner's disappointment in the economic benefit they failed to receive from a bargain is central to contract law and not tort law. See Alejandre, 159 Wash.2d at 685 n. 3, 153 P.3d 864. Moreover, it is undisputed that the Borishes entered into a RESPA with the Olsons and that the contract governs their relationship. Despite the Borishes' contention that the economic loss rule is not applicable to negligent misrepresentation claims, no such exception is recognized in Washington law. Alejandre, 159 Wash.2d at 685-86, 153 P.3d 864; Berschauer/Phillips, 124 Wash.2d at 827-28, 881 P.2d 986; Griffith v. Centex Real Estate Corp., 93 Wash. App. 202, 211-13, 969 P.2d 486 (1998), review denied, 137 Wash.2d 1034, 980 P.2d 1283 (1999). The Borishes' situation is thus identical to Alejandre's insofar as they are both home purchasers, suing a party with whom they have a contractual relationship, the requested relief involves purely economic damages, and no exception to the economic loss rule exists. Accordingly, based on the trial court's proper application of the economic loss rule, we affirm the summary judgment denying the Borishes' negligent misrepresentation claim against the Olsons.[5]
*652 ¶ 20 Additionally, as to the Borishes' intentional misrepresentation (fraud) claim against the Olsons, a jury ruled in the Olsons' favor, finding that even though the Olsons misrepresented the character of the residence, the Borishes did not reasonably rely on this misrepresentation. To the extent that the reliance element of fraudulent misrepresentation and the reliance element of negligent misrepresentation are coexistent, the Borishes are collaterally stopped from relitigating this claim and summary judgment is appropriate on these grounds as well.[6]See Mead v. Park Place Properties, 37 Wash.App. 403, 405, 681 P.2d 256 (collateral estoppel prevents a second litigation of the same issue "even if presented in a different claim or cause of action"), review denied, 102 Wash.2d 1010 (1984).

Russell Summary Judgment
¶ 21 The Borishes also argue that the trial court erred in its application of the economic loss rule to dismiss their negligent misrepresentation claim against Russell. We agree. The trial court misapplied the economic loss rule in the Borishes' claim against Russell because no contractual relationship existed between the Borishes and Russell. Moreover, material issues of fact exist regarding the nature of the residence and the Borishes' reliance on Russell's appraisal in closing on the real estate purchase. We reverse the trial court's grant of summary judgment in favor of Russell and remand.

A. Economic Loss Rule
¶ 22 In order for the economic loss rule to apply and preclude a negligent misrepresentation tort claim, there must be a contract between the parties. Water's Edge Homeowners, 152 Wash.App. at 589-91, 216 P.3d 1110; see also Alejandre, 159 Wash.2d at 681, 153 P.3d 864 (stating that the "economic loss rule applies to hold parties to their contract remedies"); Wash. Water Power, 112 Wash.2d at 861 n. 10, 774 P.2d 1199 ("[E]conomic loss describes those damages falling on the contract side of `the line between tort and contract.'" (quoting Pa. Glass Sand, 652 F.2d at 1173)). Here, the Borishes' lender, and not the Borishes, contracted with Russell for an appraisal of the property. The record contains no evidence of any contractual relationship between the Borishes and Russell. Accordingly, the economic loss rule cannot support summary judgment dismissing the Borishes' negligent misrepresentation tort claim against Russell.

B. Negligent Misrepresentation
¶ 23 Because our review of summary judgment is de novo, we must review the Borishes' negligent misrepresentation claim to determine whether summary judgment is warranted on any alternate grounds appearing in the record. Hisle, 151 Wash.2d at 860, 93 P.3d 108; LaMon v. Butler, 112 Wash.2d 193, 200-01, 770 P.2d 1027, cert. denied, 493 U.S. 814, 110 S.Ct. 61, 107 L.Ed.2d 29 (1989). *653 Russell argues that the Borishes failed to develop genuine issues of material fact for most of the required elements of a negligent misrepresentation claim. We disagree.
¶ 24 The crux of a negligent misrepresentation claim is the conveying of and reliance on false information.[7] It is clear from the record that whether the Olsons' home is a manufactured home is a disputed material fact. The Borishes presented letters and testimony that their engineer and the Department of Labor & Industries found the home was manufactured. Russell relied on government records of the home's description, testified about the building materials being inconsistent with that of manufactured homes in the mid-1970s, and deposed the home builder who testified that she and her husband built the home themselves. But for purposes of summary judgment, we view all facts in the light most favorable to the nonmoving party when determining if a trial court properly granted summary judgment. Vallandigham, 154 Wash.2d at 26, 109 P.3d 805. The Borishes' evidence is sufficient to show that Russell may have conveyed false information that they relied on when purchasing the home. The trial court erred by granting Russell's summary judgment motion because whether the Olsons' home is or is not a manufactured home and any impact this fact has on the accuracy of Russell's appraisal is a genuine issue of material fact that remains.
¶ 25 Additionally, Russell argues that the Borishes failed to provide evidence that they reasonably relied on false information that proximately caused them damages. Specifically, Russell asserts that the Borishes utilized her appraisal as a warranty of the residence's construction and that she expressly disclaimed this use. But the Borishes' relied on the appraisal for the value of the property listed in the appraisal, not as a construction warranty. The Borishes retained a contract rescission right that they could exercise only if the appraised value was for less than the purchase price. Russell had a copy of the RESPA making her aware of the Borishes' contract rights related to her appraisal. Russell valued the home at $682,318.00which is only $2,318.00 more than the Borishes' purchase price. But the appraisal is based on the belief that the Olsons' home is not a manufactured home. Had Russell believed the home to be manufactured, her appraisal value almost certainly would have dropped below the purchase price of $680,000.00, thus allowing the Borishes the option of rescinding the contract. The Borishes' alleged damages were the loss of the ability to exercise their contract rescission rights. The Borishes presented evidence of their reliance and damages sufficient to survive summary judgment. A jury must determine the reasonableness of their reliance and what damages, if any, were proximately caused by the loss of the right to rescind the contract.
¶ 26 Russell asks that we apply the jury verdict in the Olsons' fraudulent concealment and intentional misrepresentation (fraud) case to her untried negligent misrepresentation tort case. But whether the Olsons misrepresented information about the property to the Borishes and whether the Borishes justifiably relied on any misrepresentations the Olsons made is not relevant to whether the Borishes justifiably relied on the value in Russell's appraisal. Moreover, the jury entered a verdict that the Olsons made a misrepresentation of a material fact but it *654 did not specify the substance of the misrepresentation. Here, the record does not contain any jury determinations, trial court findings of fact, or conclusions of law in any of the Borishes' claims that resolve whether the Olsons' home was a manufactured home. This material issue of fact and its relationship to the home's appraisal value must be decided by a jury. The trial court erred by granting Russell's summary judgment motion and we reverse and remand for a trial on the merits of Borishes' negligent misrepresentation claim against Russell.

Attorney Fees
¶ 27 The Olsons requested attorney fees on appeal under RAP 18.1. Under RCW 4.84.330, parties can enter agreements that allow the prevailing party to recover attorney fees in disputes arising from the agreement. And tort claims are based on a contract when they arise from the contract and the contract is central to the dispute. Brown v. Johnson, 109 Wash.App. 56, 58, 34 P.3d 1233 (2001). Here, the Borishes' claim against the Olsons is defeated by application of the economic loss rule to the parties' RESPA, and the Borishes' lawsuit arises out of the contractual relationship they had with the Olsons. The RESPA provides for reasonable attorney fees and expenses to a prevailing party on suits "concerning this Agreement." CP at 115. Accordingly, on compliance with RAP 18.1, the Olsons are entitled to attorney fees on appeal.
¶ 28 We reject the Borishes' challenges to the judgment in favor of the Olsons and affirm that judgment. But we reverse the trial court's summary judgment in favor of Russell and remand for trial on this claim.
We concur: HOUGHTON, J., and VAN DEREN, C.J.
NOTES
[1] The parties dispute whether the home has one or two bedrooms. On the seller disclosure form, the Olsons listed it as a two-bedroom home. The real estate listing indicated the home "has one bedroom however the guest quarters has two lofts and a bonus room (Stubbed for a bath)." CP at 111. The "guest quarters" are lofts above the garage that the Olsons' children use to sleep in. How many bedrooms the home possessed is a factual dispute that appears to have been presented to a jury during a trial on the intentional misrepresentation (fraud) claim against the Olsons. The resolution of this factual dispute is not in the record.
[2] Only two parties are relevant to this appeal the Olsons and Russell. The other named parties either reached settlement agreements with the Borishes or their cases were dismissed based on the economic loss rule and are not before us in this appeal.
[3] The Borishes' requested relief was as follows:

1. For damages in an amount to be determined at trial including, but not limited to, damages relating to: the loss of the value of the property as advertised; the cost of demolishing and disposing of the house; the insufficient septic system; and the fees paid to professionals to assess the subject property.
2. For other such relief the Court deems just and appropriate, including attorney's fees and costs.
CP at 51.
[4] We note that Russell abandoned her cross-appeal of the February 9, 2007 court order denying her summary judgment motion. On April 7, 2009, this court sent a letter to the parties highlighting an absence of briefing on Russell's cross-appeal. On April 17, 2009, we received two lettersone from the Borishes stating that they would submit briefing on the cross-appeal and one from Russell stating she would only submit briefing at this court's request or if the Borishes submitted more briefing on their claims. We did not request or receive any briefing on the cross-appeal and consider it abandoned.
[5] We note that our Supreme Court did not contradict itself when it remanded Ross v. Kirner, 162 Wash.2d 493, 172 P.3d 701 (2007), a case involving a negligent misrepresentation claim, after its decision in Alejandre. As we have already stated, Alejandre did not bar all negligent misrepresentation claims. In addition, none of our Supreme Court's reasoning when addressing Ross's negligent misrepresentation claim involved the economic loss rule, so there is no express conflict between Alejandre and Ross. Ross, 162 Wash.2d at 499-500, 172 P.3d 701.

Further, Court of Appeals' decisions after Alejandre have not, as the Borishes suggest, "struggled to implement the Alejandre decision." Br. of Appellant at 21. Each of the cases that the Borishes cite are (1) in accord with Alejandre because they involved contractual relationships and purely economic losses necessitating an application of the economic loss rule for the negligent misrepresentation claims that the parties brought; or (2) do not conflict with Alejandre because the economic loss rule is not the basis of the Court of Appeals' decision; or (3) do not conflict with Alejandre because the cases are factually distinguishable. Townsend v. Quadrant Corp., 153 Wash.App. 870, 224 P.3d 818 (2009) (deciding the legal questions presented without reference to the economic loss rule); Water's Edge Homeowners, 152 Wash.App. at 578, 589-91, 216 P.3d 1110 (holding that under the circumstances of the case, which did not include a negligent misrepresentation claim, that the trial court could consider the economic loss rule as a defense but not ruling on the merits of the economic loss rule defense on appeal); Jackowski v. Borchelt, 151 Wash.App. 1, 12-15, 209 P.3d 514 (2009) (affirming summary judgment of a home buyer's negligent representation claim by applying the economic loss rule in the presence of a contract and distinguishing Alejandre when reversing summary judgment against a real estate agent and firm because of an improper application of the economic loss rule that precluded a professional malpractice claim when the agent and firm's duties were rooted in statutes and the common law and not the contract), review granted, 168 Wash.2d 1001, 226 P.3d 780 (2010); Cox v. O'Brien, 150 Wash.App. 24, 35-36, 206 P.3d 682 (2009) (applying the economic loss rule to preclude tort claims for negligent misrepresentation and fraudulent representation because a contract existed between the parties and all damages were purely economic), review denied, 167 Wash.2d 1006, 220 P.3d 208 (2009); Carlile v. Harbour Homes, Inc., 147 Wash.App. 193, 207, 194 P.3d 280 (2008) (affirming the summary judgment dismissal of a negligent misrepresentation claim because "the homeowner's here have failed to articulate a cognizable negligent misrepresentation claim" and not because of an application of the economic loss rule and affirming the summary judgment dismissal of an intentional misrepresentation (fraud) claim based on the economic loss rule), review granted in part, 166 Wash.2d 1015, 210 P.3d 1019, dismissed, No. 82812-1 (Wash. Sept. 30, 2009); King v. Rice, 146 Wash.App. 662, 671, 191 P.3d 946 (2008) (holding that the economic loss rule did not bar malicious mischief and general negligence claims in a home purchaser's lawsuit that did not involve any negligent misrepresentation claims), review denied, 165 Wash.2d 1049, 208 P.3d 554 (2009); Stieneke v. Russi, 145 Wash.App. 544, 558-59, 190 P.3d 60 (2008) (reversing a trial court's damage award for negligent misrepresentation because the economic loss rule precludes tort damages where losses are purely economic), review denied, 165 Wash.2d 1026, 203 P.3d 381 (2009).
[6] The Borishes' pleadings, by including "incorporated by reference" statements of the preceding complaint sections in each subsequent cause of action, added three claims against the Olsons in addition to the negligent misrepresentation claim: (1) intentional misrepresentation (fraud), (2) violations of RCW 18.86.030, and (3) CPA violations. As part of our de novo review, we have reviewed these claims and discern no error. The Borishes' intentional misrepresentation (fraud) claim was dismissed following a jury verdict and the Borishes did not assign any error to that verdict or the March 27, 2008 judgment dismissing this claim. RCW 18.86.030 does not apply to the Olsons because it is a statute regarding the duties of a real estate licensee and the Olsons are not realtors. Finally, the CPA does not apply because this is a private party dispute and lacks the required public interest in the outcome for these claims. See Seattle Endeavors, Inc. v. Mastro, 123 Wash.2d 339, 349, 868 P.2d 120 (1994); see also RCW 64.06.060 (stating seller disclosures during real property transfers are not a matter affecting the public interest under the CPA).
[7] A plaintiff, here the Borishes, claiming negligent misrepresentation must prove six elements by clear, cogent, and convincing evidence:

"(1) That [the defendant] supplied information for the guidance of others in their business transactions that was false; and
(2) That [the defendant] knew or should have known that the information was supplied to guide [the plaintiff] in business transactions; and
(3) That [the defendant] was negligent in obtaining or communicating false information; and
(4) That [the plaintiff] relied on the false information supplied by [the defendant]; and
(5) That [the plaintiff's] reliance on the false information supplied by [the defendant] was justified (that is, that reliance was reasonable under the surrounding circumstances); and
(6) That the false information was the proximate cause of damages to [the plaintiff]."
Lawyers Title Ins. Corp. v. Baik, 147 Wash.2d 536, 545, 55 P.3d 619 (2002) (alterations in original) (quoting ESCA Corp. v. KPMG Peat Marwick, 135 Wash.2d 820, 827-28, 959 P.2d 651 (1998)).