

FILED
COURT OF APPEALS
STATE OF WASHINGTON

2014 MAR 31 AM 10: 53

THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| JOHN PATRICK BULLINGER, a single man, | ) ) ) | No. 68446-9-I |
| Respondent/ Cross-Appellant, | ) ) ) | DIVISION ONE |
| v. | ) ) | |
| DIANA YVONNE LILLA, a single person, | ) ) | UNPUBLISHED OPINION |
| Appellant/ Cross-Respondent. | ) ) ) | FILED: March 31, 2014 |

BECKER, J. — This appeal is from a judgment awarding damages against the seller of a condominium unit who failed to disclose water intrusion damage that detracted from the unit's value. The appellant attempts to relitigate matters already determined by findings of fact entered after a bench trial. Because the findings of fact are supported by substantial evidence and they in turn support the conclusions of law, we affirm.

According to unchallenged findings of fact, on July 6, 2009, appellant Diana Lilla and respondent John Bullinger entered into a purchase and sale agreement. Lilla agreed to sell Bullinger her condominium, unit 31 of the Phinney Ridge Condominiums in Seattle. The sale closed on August 13, 2009. After Bullinger took possession of unit 31, he learned there was extensive water

damage in the building and a pending study to determine its extent. Bullinger filed suit against Lilla, alleging negligent misrepresentation, intentional misrepresentation, and fraudulent concealment. In a bench trial, the court held Lilla liable on all three causes of action. The court awarded Bullinger $28,700 in damages and awarded him attorney fees as the prevailing party.

This court reviews the decision of a judge in a bench trial by determining (1) whether substantial evidence supports the challenged findings of fact and (2) whether those findings support the conclusions of law. Sunnyside Valley Irrigation Dist. v. Dickie, 149 Wn.2d 873, 879-80, 73 P.3d 369 (2003).

## NEGLIGENT MISREPRESENTATION

To prevail on a claim for negligent misrepresentation, a plaintiff must prove the following elements by clear, cogent, and convincing evidence: (1) the defendant supplied information for the guidance of others in their business transactions that was false; (2) the defendant knew or should have known that the information was supplied to guide the plaintiff in business transactions; (3) the defendant was negligent in obtaining or communicating the false information; (4) the plaintiff relied on the false information supplied by the defendant; (5) the plaintiff's reliance on the false information supplied by the defendant was justified (that is, reliance was reasonable under the surrounding circumstances); and (6) the false information was the proximate cause of damages to the plaintiff. Borish v. Russell, 155 Wn. App. 892, 906, 230 P.3d 646 (2010), review denied, 170 Wn.2d 1024 (2011). Lilla challenges elements 3, 4, and 5.

2

*Negligence*

In Washington, the seller of a condominium unit is required to disclose to the buyer all defects of which the seller has actual knowledge by filling out form 17. RCW 64.06.020. Lilla prepared and supplied form 17 to Bullinger. Question 1(g) asked whether there was any study, survey project, or notice that would adversely affect the property. Lilla answered no. She did not disclose an envelope study that she knew was under way to investigate the nature and extent of damage resulting from water intrusion in the entire building. The water intrusion was discovered during the repair of the decks in stack 1. Question 4(f) asked about structural defects. Lilla disclosed that she was currently repairing the sliding glass door in her unit, but she did not disclose the water intrusion problem she knew existed in the entire building. In response to question 6, Lilla disclosed there were shared common areas. But in response to question 10, which asked her to disclose "any other existing material defects affecting the property that a prospective buyer should know about," she did not disclose any of the information she had about the existing problem with water intrusion or her knowledge that the entire building would likely have to be re-sided. The trial court found that these nondisclosures were material.

Lilla contends she was not being negligent when she failed to disclose the problems in areas of the condominium outside of unit 31 and its deck.

The condominium is composed of one, four-story building that contains 20 units arranged in five vertical "stacks." Lilla owned unit 31. Unit 31 is the third-floor unit in "Stack 1."

3

Before deciding to sell, Lilla became aware of significant rot in her unit's deck that made it unmarketable. The condominium association hired a company to inspect Lilla's deck, and they had it repaired. In the course of this activity, Lilla and the condominium association discovered significant similar damage to the decks immediately above and below Lilla's. Further investigation showed that the entire building suffered from water intrusion and that the entire building would likely have to be re-sided. A study was commissioned by the homeowners' association to determine the precise extent of damage. This is the pending study that Bullinger argues Lilla had a duty to disclose to him.

Lilla points out that form 17 begins with a statement that the seller is to make disclosures about the condition of "the Property." The purchase and sale agreement identifies "the Property" as "Unit 31 of Phinney Ridge Condominium." In Lilla's view, a reasonable person would understand the questions on form 17 as relating only to the particular unit being offered for sale.

In a condominium, undivided interests in the common elements are vested in the unit owners. RCW 64.34.020(10). The trial court's findings establish that Lilla was well aware the water intrusion problem affected the building as a whole. Before she sold her unit, Lilla personally took charge of the investigation and repair work on behalf of the condominium association. "She knew that uncertainty with regard to the nature and extent of water intrusion had a very adverse impact on the marketability and value of Unit 31." Finding of Fact 8. The trial court made a credibility finding adverse to Lilla. "Lilla's claim that she

4

thought all issues pertaining to water intrusion had been addressed by the repairs to Unit 31 and Stack One is not credible." Finding of Fact 11.

Under the circumstances, the water intrusion problem was an existing material defect affecting Lilla's unit that a prospective buyer should know about. The trial court's conclusion that Lilla was negligent in communicating the information on form 17 is supported by the findings, and it establishes the third element of negligent misrepresentation.

*Reliance*

Lilla argues it was not reasonable for Bullinger to rely on the disclosures she made in form 17 even if they were false. She points out that Bullinger knew the condominium was 25 years old and had relatively low reserves. Also, when visiting the condominium before making the purchase, Bullinger was told that water damage in some of the decks had recently been repaired. An inspection report prepared for Bullinger noted there was some siding missing on the front of the building. Lilla contends Bullinger, with all of this information, should have done more investigation.

Lilla cites Jackowski v. Borchelt, 174 Wn.2d 720, 278 P.3d 1100 (2012). In that case, the sellers represented that there was no fill material on their property, when in fact there was. A summary judgment for the buyers was reversed, however, on the ground that there were material questions of fact as to whether the fill material would have been discovered in a reasonable inspection. Under Jackowski, even when a form 17 contains an error, a buyer's reliance may be unreasonable where the buyer is put on inquiry notice by facts inconsistent

with the form 17 disclosures. Lilla contends that even if she misrepresented the water damage problem, Bullinger's claim fails because he was on inquiry notice as to that problem.

Unlike in Jackowski, where the existence of a material issue of fact led to reversal of an order of summary judgment, here the issue of inquiry notice was litigated and the relevant fact was found against Lilla. Bullinger retained a property inspector whose inspection revealed no problems with water intrusion. Bullinger himself "engaged in a diligent lay inspection of the property, and discovered nothing that did or should have revealed water intrusion problems or put Bullinger on inquiry notice of such problems." Finding of Fact 12. Lilla fails to show that finding of fact 12 is unsupported by the evidence. It is also significant that the purchase and sale agreement gave Bullinger a right of action for intentional or negligent misrepresentations made in form 17. Lilla was aware that Bullinger intended to rely on the representations she made in form 17.

"An omission alone cannot constitute negligent misrepresentation, since the plaintiff must justifiably rely on a misrepresentation." Ross v. Kirner, 162 Wn.2d 493, 499, 172 P.3d 701 (2007). Relying on this rule, Lilla contends Bullinger's claim must fail because her answers on form 17 were omissions. We disagree. Lilla represented that the only defect affecting the property that a prospective buyer should know about was a problem with her sliding door. This was an affirmative representation, and it was false.

6

The trial court's conclusion that Bullinger justifiably relied on the false information Lilla provided on form 17 establishes the fourth and fifth elements of the claim of negligent misrepresentation.

## INTENTIONAL MISREPRESENTATION

The trial court concluded that Bullinger established the elements of intentional misrepresentation by clear, cogent, and convincing evidence. Lilla assigns error to this conclusion.

One of the elements of this claim is that a party made a "representation of an existing fact." West Coast, Inc. v. Snohomish County, 112 Wn. App. 200, 206, 48 P.3d 997 (2002). In the statement of issues in her opening brief, Lilla asks whether any of her answers on the form 17 can be a representation of an existing fact "where the form itself purports only to be a statement of material facts or material defects within Lilla's *actual knowledge*?" Her brief fails to address this issue further with argument or citation to authority, and therefore, we need not address it. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808-09, 828 P.2d 549 (1992).

Lilla has shown no error in the trial court's decision to hold her liable for intentional misrepresentation.

## FRAUDULENT CONCEALMENT

Failure to disclose a material fact where there is a duty to disclose is fraudulent. Obde v. Schlemeyer, 56 Wn.2d 449, 452-56, 353 P.2d 672 (1960). A seller's duty to speak arises where: (1) the residential dwelling has a concealed defect; (2) the vendor has knowledge of the defect; (3) the defect presents a

danger to the property, health, or life of the purchaser; (4) the defect is unknown to the purchaser; and (5) the defect would not be disclosed by a careful, reasonable inspection by the purchaser. Alejandre v. Bull, 159 Wn.2d 674, 689, 153 P.3d 864 (2007). The trial court concluded that Bullinger proved all of these elements.

*Danger to Property, Health, or Life*

The third element requires proof that the concealed defect was dangerous. According to Lilla, "Bullinger presented no evidence that the defects in the building caused injury to anything other than the building itself." Appellant's Br. at 33. In so arguing, Lilla is attempting to apply the economic loss rule as discussed in Stieneke v. Russi, 145 Wn. App. 544, 555-59, 190 P.3d 60 (2008), review denied, 165 Wn.2d 1026 (2009). But the economic loss rule has no application to a fraudulent concealment claim. Stieneke, 145 Wn. App. at 560, citing Alejandre, 159 Wn.2d at 689. And in any event, the purchase and sale agreement gave Bullinger a contractual right to assert tort claims that otherwise would be barred by the economic loss rule. See Conclusion of Law 3.

The record supports the trial court's conclusion that Bullinger proved the existence of a concealed defect that was dangerous.

*Reasonable Inspection*

The fifth element requires proof that the concealed defect would not be discovered by a reasonable inspection. Alejandre, 159 Wn.2d at 689. The trial court concluded that "the defects would not have been disclosed and were not

disclosed by a careful, reasonable inspection of the Condominium and Unit 31." Conclusion of Law 8. Lilla attacks this conclusion by repeating her argument that Bullinger did not properly follow up on clues that the building had water intrusion problems.

The professional inspector's report summary included "Action Items" and "Consideration Items." Under items for consideration regarding the structure, item 8 recommended asking the owner for general information about such things as insurance claims on the property, covenants, the cost of association fees, and pending lawsuits. This item included the question, "Suggest reading the minutes from the last meeting?" Lilla contends that Bullinger should have responded to these comments by demanding to review minutes of the condominium association meetings. Lilla contends the minutes would have informed Bullinger about the pending engineering study.

Under items for consideration regarding the exterior, item 6 stated, "Missing pieces of siding/trim noted at front of complex. Check with CCR." Lilla contends the notation about the missing siding put Bullinger on notice to make a specific inquiry about why the siding was missing.

Without more, these notes in the inspection report do not compel a finding that Bullinger failed to make a careful and reasonable inspection. Lilla fails to show that a prospective purchaser of a condominium unit has a duty to ask for and read meeting minutes. She does not explain what Bullinger would have found if he had followed up on the statement "Check with CCR."

This is not a case like <u>Douglas v. Visser</u>, 173 Wn. App. 823, 295 P.3d 800 (2013), where the buyers were aware of obvious rot and yet failed to make a reasonable inquiry. Lilla's challenges to the findings and conclusions on her liability for fraudulent concealment are not supported by the record.

## DAMAGE AWARD

The trial court granted judgment to Bullinger for $28,700 in damages proximately caused by Lilla's fraud, fraudulent concealment, and negligent misrepresentation. The amount was calculated as the 5 percent share for unit 31 of projected special assessments attributable to the water intrusion problem:

> Though the work to repair the Condominium has not been completed, the Association has employed design professionals who have completed the inspection of the property and a scope of work which was released for bids. The Court finds that the current professionally estimated cost to the Association for completing the repair work on the Condominium, including the inspections, engineering, and construction, will result in special assessments from the Association to the owners. Units 31's share of these special assessments is 5%.
>     . . . A portion of the assessments will pay for work not directly related to water intrusion . . . . However, only a portion of the special assessments attributable to Unit 31 payable by Bullinger were proximately caused by Lilla's misrepresentations and Bullinger can be afforded the benefit of his bargain by awarding him that amount. Based upon the testimony of Mr. Rudkin, the projected amount of the special assessment attributable to the water intrusion problem is approximately $573,300. Bullinger's share of these projected costs is $28,700.

Findings of Fact 15, 16.

Lilla assigns error to the award of damages. She claims that Bullinger failed to prove both the fact and amount of damages.

Bullinger proved at trial that he was damaged by Lilla's nondisclosure but not precisely how much he was damaged—the amount of damages was left to a later hearing.

Uncertainty as to the fact of damage is fatal, while uncertainty as to the amount or quantum of damages is not to be regarded as fatal to a litigant's right to recover damages. Sund v. Keating, 43 Wn.2d 36, 46, 259 P.2d 1113 (1953). Bullinger established the fact of damage with certainty. Bullinger believed he was purchasing a condominium in a building with no known defects. In fact, he was purchasing a condominium in a building with a known and unremediated water intrusion problem. The water damage to the building he is now a part owner of is his damage.

At trial, there were significant questions as to whether insurance would pay all or a portion of the cost and what the cost would actually be. Under Sund, uncertainty as to the *amount* of damages was not fatal. The trial court held a hearing on this issue and found that there would be special assessments. The court made a reasonable estimate of the assessment Bullinger would have to pay to remediate the water intrusion and found that awarding him that amount would give him the benefit of his bargain.

Lilla argues the amount awarded is speculative because of the pending insurance claims, which might have paid the entire cost and made it unnecessary for Bullinger to pay a special assessment. The trial court, however, found that the projected repair work "will result" in special assessments. The court's findings, quoted above, defeat Lilla's argument that the amount awarded was

11

speculative. Lilla fails to show that the findings are unsupported by the evidence and instead attempts to relitigate the facts on appeal. And even if it turns out there is insurance to cover the costs, it does not negate the fact that Bullinger was damaged at the time of sale by receiving ownership of a property with a significant concealed defect. The trial court did not err by using the estimated amount of assessments as the measure of damage.

We conclude the trial court did not relieve Bullinger of the responsibility for proving the fact and amount of damage.

## ATTORNEY CLIENT PRIVILEGE

In his litigation against Lilla, Bullinger was represented by his employer, an attorney. Bullinger became a member of the board of the condominium association after he purchased unit 31. The association was represented by separate counsel.

Lilla attempted to bring in the association as a third-party defendant by amending her answer shortly before trial. At trial, Lilla attempted to inquire into conversations Bullinger had with other board members about subpoenas Lilla was serving. Bullinger objected that answering the questions would potentially disclose information protected by the privilege he and other board members had with counsel for the association. The court sustained the objection absent "some showing that attorney-client privilege may not be involved." Lilla asked the court to clarify the scope of the excluded testimony. The court asked how the testimony was relevant to the case. Lilla responded: "Just to the extent that he

12

is telling his fellow board members not to cooperate with Ms. Lilla's counsel, I think, is important for the Court to know that."

The court ruled that the exclusion was based on both the attorney-client privilege and the failure to demonstrate relevancy:

And you are not to inquire further on this subject matter absent an appropriate showing that attorney-client privilege is not involved and that somehow, even if it isn't involved, that this matter is a relevant subject for inquiry in this action.

On appeal, Lilla makes no argument as to relevancy. She does not identify any element of any cause of action that would have been affected by information about Bullinger's conversations with his fellow board members. Her brief simply requests that if this matter is remanded for retrial, the trial court should be instructed that the attorney-client privilege has no application to a conversation between two nonattorneys. Because we are not remanding for retrial, and there is no showing of relevance or prejudice in any event, we decline to address Lilla's argument that the attorney-client privilege was an inappropriate basis for excluding the testimony.

DISMISSAL OF THIRD-PARTY COMPLAINT

Bullinger filed his complaint on January 27, 2010. Trial was set for July 11, 2011. Lilla did not file an answer until March 28, 2011. Eight days later, Lilla filed an amended answer containing a third-party complaint against the condominium owners' association. Bullinger filed a motion to strike the third-party complaint. The trial court granted the motion. Lilla assigns error to this ruling.

13

CR 14(a) is the pertinent rule. It controls when a defendant may bring in a third party.

> **When Defendant May Bring in Third Party.** At any time after commencement of the action a defending party, as a third party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him. The third party plaintiff need not obtain leave to make the service if he files the third party complaint not later than 10 days after he serves his original answer. Otherwise he must obtain leave on motion upon notice to all parties to the action. The person served with the summons and third party complaint, hereinafter called the third party defendant, shall make his defenses to the third party plaintiff's claim as provided in rule 12 and his counterclaims against the third party plaintiff and cross claims against other third party defendants as provided in rule 13. The third party defendant may assert against the plaintiff any defenses which the third party plaintiff has to the plaintiff's claim. The third party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third party plaintiff. The plaintiff may assert any claim against the third party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third party plaintiff, and the third party defendant thereupon shall assert his defenses as provided in rule 12 and his counterclaims and cross-claims as provided in rule 13. Any party may move to strike the third party claim, or for its severance or separate trial. A third party defendant may proceed under this rule against any person not a party to the action who is or may be liable to him for all or part of the claim made in the action against the third party defendant.

CR 14(a).

The first part of the rule permits a defendant to file a third-party complaint without leave of court within 10 days of the defendant's answer. Lilla interprets this section of the rule as providing a defendant with a safe harbor, i.e., an absolute right to bring in a third-party defendant within 10 days of the answer. Lilla overlooks the provision stating that "[a]ny party may move to strike the third

party claim, or for its severance or separate trial." By authorizing a motion to strike, the rule necessarily contemplates that the trial court may grant such a motion.

Ordinarily, a defendant's answer is filed early in the litigation. It makes sense that the rule would not require leave of court to add a third party early in the litigation, before a trial date is set. It also makes sense that in the unusual case where the defendant does not file an answer until close to trial, the rule would give the trial court the power to grant a motion to strike a third-party claim if the defendant has caused prejudice to other parties by waiting so long to bring the claim.

Denial of leave to amend under CR 14(a) is within the discretion of the trial court, subject to review only for abuse of discretion. Purser v. Rahm, 104 Wn.2d 159, 174, 702 P.2d 1196 (1985), cert. dismissed, 478 U.S. 1029 (1986). Because a defendant's motion for leave to amend and a plaintiff's motion to strike both put the issue of the third-party complaint in a similar posture before the trial court, it is appropriate to apply the same standard of review to the granting of a motion to strike. Here, the court found that Bullinger would be substantially prejudiced by the addition of a third party so late in the proceedings. This was not an abuse of discretion.

## ATTORNEY FEES

The trial court found that Bullinger was entitled to attorney fees under the parties' Condominium Purchase and Sale Agreement, which provided for prevailing party attorney fees and expenses in any dispute arising out of the

15

agreement. The court applied the lodestar method and found that Bullinger's $55,000 fee request was reasonable. Lilla contends the contract did not provide a basis for an award of fees because "there was no breach of contract found, and the damages awarded were based solely on Bullinger's tort claims."

As indicated in conclusion of law 17, the attorney fee provision in the agreement made an award of fees proper under Brown v. Johnson, 109 Wn. App. 56, 34 P.3d 1233 (2001). "If an action in tort is based on a contract containing an attorney fee provision, the prevailing party is entitled to attorney fees." Brown, 109 Wn. App. at 58. Following Brown, we conclude the trial court properly granted Bullinger's request for fees and costs under the agreement. By the same rationale, we conclude that Bullinger should be awarded fees on appeal, subject to compliance with RAP 18.1.

Affirmed.

Becker, J.

WE CONCUR:

_____    _____